# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 488 | **DATE** | 3/4/2002 |
| **CASE TITLE** | Valerie a. Mueller vs. Gina Martin Mueller, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum Opinion and Order. Defendant's motion to reconsider is granted. (15-1) The Court vacates its order of 2/20/02 denying her motion to dismiss lack of personal jurisdiction. The Court orders that the case be transferred to the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. Section 1406(a). The Clerk is directed to immediately transmit the records and files of this case to the Clerk of that District and Division. The previously-entered temporary restraining order, as modified on 2/27/02, is extended through 5:00 p.m. on 3/14/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 05 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 17 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 0 5 2002

VALERIE A. MUELLER, as parent, )
guardian, next friend, and trustee )
for William A. Mueller III and )
Matthew T.A. Mueller, )
)
                Plaintiff, )
)
vs. )   Case No. 02 C 488
)
GINA MARTIN MUELLER and )
METROPOLITAN LIFE INSURANCE CO., )
)
                Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Valerie Mueller brings this action on behalf of her sons, William Mueller III and Matthew Mueller, against Gina Martin Mueller and Metropolitan Life Insurance Company. (TFC Management, Inc. was originally named as a defendant but was dismissed without prejudice on February 27, 2002.) Valerie – we will call the individuals by their first names because they all have the same last name – was married to William Mueller Jr. in 1981; until 1993, they resided together in Will County, Illinois with their sons William III and Matthew. They were divorced in February 1993. The divorce decree, entered by a Will County, Illinois judge, required William to pay child support and maintenance to Valerie and maintain health insurance covering William III and Mueller; it further provided that William and Valerie would be jointly responsible for the post-high school education expenses of the boys through their 24th birthdays, in proportion to their respective incomes. The decree awarded Valerie the entirety of William's interest in his

401(k) retirement plan, with the award to be "set forth in a Qualified Domestic Relations Order to be served upon the plan administrator." The decree also contained the following provision:

> [William] shall maintain life insurance on his life with a minimum face value of $250,000 at his expense naming [Valerie] as trustee for the minor children as irrevocable beneficiaries on said policy. ... The obligation of [William] to maintain such insurance shall last for so long as he is obligated to provide for the support or educational expenses of the children.
>
> [William] shall deposit copies of the policy with [Valerie] and shall cause or direct that duplicate premium notices and receipts be sent to her.
>
> The parties shall each retain the sole ownership of any other policies or [sic] insurance on their lives as their sole and separate property.

Judgment for Dissolution of Marriage, pp. 8-9.

At the time of the divorce decree, William was living in Texas, and after the divorce, he married defendant Gina Martin Mueller. They subsequently moved to Florida. William did not live up to his obligations under the life insurance provision of the divorce decree quoted above. He maintained a $100,000 life insurance policy naming Valerie as the beneficiary, but obviously that was not sufficient in amount (let alone in form) to satisfy the terms of the divorce decree. Through his employer he participated in a group life insurance plan, underwritten by defendant Metropolitan Life Insurance Company, which provided him with more than $250,000 in coverage. However, William designated Gina as the beneficiary of this life insurance, ignoring his obligation under the divorce decree.

Valerie was aware of William's obligation regarding life insurance and from time to time asked him whether he had life insurance in effect that met his obligation. William repeatedly told her that it was "taken care of," but he never provided her with a copy of a policy, and she never insisted on one or did anything to enforce the decree in this regard. Valerie also was aware

2

that William had life insurance through his employer, but she did not follow up directly with the employer and did not obtain any sort of order from the divorce court to enforce William's life insurance obligation vis-a-vis that particular insurance policy.

William died in August 2001. Valerie received payment under the $100,000 insurance policy previously mentioned but eventually learned that William had not complied with his life insurance obligation under the divorce decree. She also learned that Metropolitan had underwritten the group life insurance plan of William's employer and that Metropolitan had paid all or part of the benefits of that policy to Gina. Valerie commenced this action against Gina and Metropolitan in January 2002, claiming a constructive trust over the proceeds of the Metropolitan policy. On February 1, 2002, the Court issued a temporary restraining order barring disposition of any of the funds that had been or were to be paid under the Metropolitan policy. On February 20, Gina appeared via counsel and moved to dismiss the action for lack of personal jurisdiction. The Court orally denied the motion and set Valerie's motion for preliminary injunction for hearing on February 27. On that date, Gina moved for reconsideration of the personal jurisdiction ruling, and the Court heard testimony and argument regarding Valerie's motion for preliminary injunction.

**Personal jurisdiction**

Upon reconsideration, the Court concludes that it lacks personal jurisdiction over Gina.[1] This Court has personal jurisdiction if an Illinois court would have jurisdiction. Fed. R. Civ. P. 4(k)(1)(A). Though the parties have argued over whether jurisdiction exists under several specific subsections of the Illinois "long-arm" statute, that statute also provides that an Illinois

---

[1] Metropolitan has not argued that personal jurisdiction is lacking.

court may exercise jurisdiction on any basis permitted by the United States and Illinois constitutions. 735 ILCS 5/2-209(c). Because that is the broadest scope of jurisdiction permitted, we analyze whether the exercise of jurisdiction over Gina would comport with due process.

Under the Fourteenth Amendment's due process clause, personal jurisdiction over a nonresident defendant must comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Jurisdiction is proper when the defendant had such "minimum contacts" with the forum state that she had "fair warning" that based on her conduct and connection with that state, she reasonably should anticipate being sued there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-75 (1985). Under ordinary circumstances, due process requires that the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* at 475.

Based on the evidence submitted, William knowingly undertook and breached a duty to Illinois residents, and he had numerous post-divorce contacts with this state in which he misled Valerie about his compliance with the decree. There is no question that an Illinois court would have jurisdiction over him if he were still living. But William's contacts with the state do not give the Court jurisdiction over Gina. *See Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) (mere relationship with party who has contacts with forum is not sufficient basis for jurisdiction); *Green v. Advance Ross Electronics Corp.,* 86 Ill. 2d 431, 440, 427 N.E.2d 1203, 1208 (1981) (same).

Valerie argues that because of William's breach of his duties under the divorce decree, a court may impose a constructive trust over the proceeds of the life insurance of which Gina is the

4

beneficiary. But this theory does not provide the Court with a basis to exercise jurisdiction over Gina. Valerie has not identified any contacts between Gina and Illinois other than the fact that she married a former citizen of this state. Even if Gina herself had owed a duty to Valerie, William III, or Matthew, a non-resident's breach of a duty (even a fiduciary duty) owed to an Illinois resident is insufficient by itself to confer jurisdiction on an Illinois court over an action to redress the breach. *See Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 572 (7th Cir. 1985). Gina's connection with Illinois is even more attenuated than that. Though the commission of an intentional or knowing tortious action directed at an Illinois victim would suffice, *see Calder v. Jones*, 465 U.S. 783, 789-90 (1983), there is no contention or evidence that Gina knew about the terms of the divorce decree or even that she had any idea that William had failed to comply with those terms. Gina no doubt foresaw, or could have predicted, that the fact that she was the beneficiary of William's life insurance policy meant that others (including his children and former wife) would not benefit from it, but the mere foreseeability of causing injury in the forum state is not enough to establish jurisdiction there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *Burger King*, 471 U.S. at 474.

There do appear to be some circumstances in which a court can exercise jurisdiction over a non-resident defendant who herself has had no contact with the forum state. For example, a non-resident defendant is subject to jurisdiction in Illinois if she participated in a conspiracy and one of the conspirators performed a substantial act in furtherance of the conspiracy in Illinois. *See, e.g., Zivitz v. Greenburg*, No. 98 C 5350, 1999 WL 984397, at *5 (N.D. Ill. Oct. 25, 1999); *United Phosphorus, Ltd. v. Angus Chemical Co.*, 43 F. Supp. 2d 904, 912 (N.D. Ill. 1999). *See generally Stauffacher v. Bennett*, 969 F.2d 455, 459 (7th Cir. 1992). But the exercise of

5

jurisdiction on that basis requires a threshold showing that the non-resident defendant knowingly became part of a conspiracy, *see United Phosphorus,* 43 F. Supp. 2d at 912, and there is no evidence that Gina knew that William had flouted his obligations to his former spouse and her children, let alone that she had any part in his actions.

In sum, the Court concludes that the fortuity of having been made a beneficiary of a life insurance policy that the plaintiff says should have been for the benefit of her children is not enough to confer this Court with personal jurisdiction over Gina. For this reason, the Court grants Gina's motion for reconsideration.

Under the present circumstances, dismissal of the case is not the appropriate remedy; as we have noted, Metropolitan has not challenged personal jurisdiction. For obvious reasons, it is important to have this entire action pending in a single court. Valerie has asked that we transfer the case to an appropriate jurisdiction rather than dismissing it. The Court agrees that this is the appropriate remedy, and 28 U.S.C. §1406(a) permits the Court to transfer an action in which venue is improper even if personal jurisdiction is lacking. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463 (1962).[2] Gina lives in Volusia County, Florida, which is part of the Middle District of Florida, Orlando Division. *See* 28 U.S.C. §89(b); map located at *www.flmd.uscourts/gov/where-to-file.* The Court will direct that the case be transferred to that District forthwith.

### Request for preliminary injunction

Because the case cannot proceed in this District, it is inappropriate for the Court to determine Valerie's motion for a preliminary injunction. But it likewise would be inappropriate

---

[2] Venue is improper here under 28 U.S.C. §1391 because none of the defendants reside here and the acts or omissions that give rise to the claim took place in states other than Illinois.

6

to leave the parties to their own devices while the transfer of the case is proceeding. If we did that, there is a significant possibility that the funds that are the subject of the parties' dispute would be dissipated or transferred, which effectively would make the case moot (William apparently left no estate other than the life insurance).

For these reasons, the Court, acting on its own motion, extends the previously-entered temporary restraining order for ten days, through March 14, 2002. In so doing, we take into account the burden that Valerie would have to carry in order to prevail on her motion for preliminary injunction. First, Valerie has shown a reasonable likelihood of success on the merits. *See Brunnenmeyer v. Massachusetts Mutual Life Insurance Co.*, 66 Ill. App. 3d 315, 318, 384 N.E.2d 446, 448 (1979) (constructive trust imposed over father's life insurance policy based on divorce decree); *Schwass v. Schwass*, 126 Ill. App. 3d 512, 514, 467 N.E.2d 957, 959 (1984) (same). Gina argues that Valerie's claim is preempted by ERISA because the claim is directed at benefits provided pursuant to an employee welfare benefit plan. There is a split in the Circuits on this issue; neither the Seventh Circuit nor the Eleventh (where the Middle District of Florida is located) have addressed the point. Until 1984, several Circuits had held that ERISA did not preempt state domestic relations law. *See Metropolitan Life Insurance Co. v. Wheaton*, 42 F.3d 1080, 1082-83 (7th Cir.1994) (citing cases). Congress addressed the issue in 1984, enacting the Retirement Equity Act, which required employee pension plans to provide that benefits cannot be assigned or alienated, except if a "qualified domestic relations order" is entered. *See* 29 U.S.C. §1056(d). The Act, however, did not address employee welfare plans, and a group life insurance plan is a welfare plan, not a pension plan. Thus it is generally held that §1056(d) does not require a QDRO as a condition of assignment or alienation of employee welfare plan benefits.

7

*See, e.g., Equitable Life Assurance Co. v. Crysler,* 66 F.3d 944, 948 (8th Cir. 1995); *Metropolitan Life Insurance Co. v. Marsh,* 119 F.3d 415, 419 (6th Cir.1997); *Brandon v. Travelers Insurance Co.,* 18 F.2d 1321, 1324 (5th Cir. 1994). But several Circuits have nonetheless held that ERISA's general preemption provision – 29 U.S.C. §1144(a), which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" – precludes a constructive trust claim against employee welfare benefits. *See Metropolitan Life Insurance Co. v. Pettit,* 164 F.3d 857, 861-65 (4th Cir. 1998); *Metropolitan Life Insurance Co. v. Marsh,* 119 F.3d at 420-21; *Brandon,* 18 F.3d at 1325. The Eighth Circuit, however, has held that the general preemption provision does not extend to that situation, *Equitable Life Assurance Co. v. Crysler,* 66 F.3d at 948, and we think that the Eighth Circuit has the better of the argument: among other things, if the general preemption provision were sufficient, there would have been no need for Congress to address the matter with regard to pension plans in the Retirement Equity Act. We also believe that the Seventh Circuit, based on Judge Posner's discussion in *dictum* for the majority in *Wheaton,* and Judge Manion's concurring opinion in that case, would follow the Eighth Circuit's approach, and as we have noted it does not appear that the Eleventh Circuit has expressed a view. In any event, Valerie is not required to show that she will win her case in order to obtain a preliminary injunction; the Court believes she has shown at least a reasonable likelihood of success.

Valerie has also made a strong showing of irreparable harm and the absence of an adequate remedy at law. One of her children has special needs, and based on her current economic circumstances there is a significant possibility that she will be unable to finance college educations for them without obtaining the full amount of death benefits that William was

8

ordered to provide.

On the present record, the balance of harms tilts in Valerie's favor. Aside from advising the Court that she has significant debts to the Internal Revenue Service that arose during her marriage to William, Gina has made no showing of irreparable harm from the entry of an injunction and has provided the Court no information regarding her economic circumstances. Finally, the public interest would favor an injunction, as there is a significant interest in ensuring that court orders like the divorce decree are complied with.

In sum, these factors counsel in favor of extending the temporary restraining order so as to preserve the status quo during the brief period of time it will take the case to be transferred.

**Conclusion**

For the reasons stated above, defendant Gina Martin Mueller's motion to reconsider [docket item 15-1] is granted; the Court vacates its order of February 20, 2002 denying her motion to dismiss for lack of personal jurisdiction. The Court orders that the case be transferred to the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. §1406(a). The Clerk is directed to immediately transmit the records and files of this case to the Clerk of that District and Division. The previously-entered temporary restraining order, as modified on February 27, 2002, is extended through 5:00 p.m. on March 14, 2002 as against both defendants. All other pending motions are terminated as moot.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 4, 2002

9